# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| HARLEYSVILLE LAKE STATES INSURANCE COMPANY ) ) ) *Plaintiff*, ) ) v. ) ) CARL E. MOST & SON, INC., DENISON, INC., ) DENISON PARKING, INC. AND INDIANA ) INSURANCE COMPANY, ) ) *Defendants.* ) | Case No.: 1:22-cv-01822 |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff, Harleysville Lake States Insurance Company ("Harleysville"), by its undersigned counsel, for its Complaint for Declaratory Judgment and Other Relief against Defendants, Carl E. Most & Son, Inc. ("Most"), Denison, Inc., Denison Parking, Inc. (collectively "Denison") and Indiana Insurance Company ("Indiana"), respectfully alleges as follows:

## NATURE OF ACTION

1. This is an insurance coverage action seeking declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Harleysville seeks a determination of the parties' rights and obligations under Commercial Business Policies numbered LS-5S-90173882-1/000, effective June 1, 2001 through June 1, 2002; LS-5S-90173882-2/000, effective June 1, 2002 through June 1, 2003; MPA9G5989, effective June 1, 2003 through June 1, 2004; MPA9G5989, effective June 1, 2004 through June 1, 2005; MPA9G5989, effective June 1, 2005 through June 1, 2006; MPA9G5989, effective June 1, 2006 through June 1, 2007; and MPA9G5989, effective June 1, 2007 through

June 1, 2008 issued to Most as the named insured.  The Policies are attached hereto as **Exhibits 1 through 7.**

2. Among other coverages, the Policies provide insurance for "damages because of 'property damage' caused by an 'occurrence' to which the insurance applies." The insurance applies to "property damage" only if said damage is caused by an "occurrence" that takes place in the "coverage territory" and the "property damage" occurs during the "policy period." The commercial general liability coverage in the Policies provides limits of $1,000,000 each "occurrence" with a $1,000,000 products-completed operations aggregate and a $2,000,000 general aggregate.

3. The parties disagree on their rights and obligations under the Policies in connection with loss or damage that may have occurred during and after the time Most provided services to Denison.  Specifically, Harleysville asserts there is no evidence that "property damage" occurred during its policy periods of 2001- 2008.

## PARTIES/DIVERSITY

4. Harleysville is a Michigan domesticated insurance company with its principal place of business in Columbus, Ohio.

5. Most is an Indiana corporation with its principal place of business in Indianapolis, Indiana.

6. Upon information and belief, Denison Inc. is an Indiana corporation with its principal place of business in Indianapolis, Indiana.

7. Upon information and belief, Denison Parking, Inc. is an Indiana corporation with its principal place of business in Indianapolis, Indiana.

8. Upon information and belief, Indiana Insurance Company is an Indiana domesticated insurance company with its principal place of business in Indianapolis, Indiana.

9. Denison is a nominal but necessary party to this declaratory judgment action. It has been joined herein solely to be bound by the judgment rendered in this cause, and no specific relief is sought against it. Harleysville is willing to dismiss Denison from this action so long as it stipulates and agrees to be bound by any judgment entered or settlement reached in this declaratory judgment action.

10. Indiana is a nominal party that may have a claim for contribution against Harleysville. Harleysville has joined Indiana solely to be bound by the judgment rendered in this cause and no specific relief is sought against it. Harleysville is willing to dismiss Indiana from this action so long as it stipulates and agrees to be bound by any judgment entered or settlement reached herein.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

12. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (2) because Denison is an Indiana corporation with its principal place of business in Indianapolis, Indiana and the conduct at issue giving rise to the underlying lawsuit took place in Indianapolis, Indiana.

## THE UNDERLYING ACTION

13. Denison filed a lawsuit captioned *Denison, Inc. and Denison Parking, Inc. v. Carl E. Most*, Case No. 49D05-1809-PL-037971, pending in the Superior Court for the County of

Marion on September 21, 2018 ("Underlying Action"). A true and correct copy of the complaint in the Underlying Action, with exhibits, is attached as **Exhibit 8**.

14. Denison owns and operates parking facilities in Indianapolis, including a multi-level parking garage at 109 South Capital Avenue known as "Plaza Garage." (Complt., ¶¶7-9).

15. Denison alleges, "for many years starting on the mid-1990s," it retained Most's services to inspect its parking facilities, and that Most held itself out as an expert in the inspection, repair, and maintenance of said facilities and reinforced concrete. (*Id*., ¶¶10-11).

16. Denison alleges it retained Most to inspect, repair, and maintain the reinforced concrete at Plaza Garage in light of its reputation. (*Id*., ¶13).

17. Denison also alleges it relied on Most to inspect and identify problems with the reinforced concrete at Plaza Garage and that Most "had sole responsibility for those inspections." (*Id*., ¶¶14-15, 17).

18. Most allegedly performed annual inspections and provided annual reports detailing repairs, maintenance, and other work necessary on the garage that also recommended which issues were priorities to address. (*Id*., ¶¶18-19, 21).

19. Once the recommendations were approved by Denison, Most was responsible for repairing the reinforced concrete and ensuring the quality of the repairs. (*Id*., ¶25).

20. Denison alleges that it paid millions to Most in response to invoices submitted by Most for its expert services, including invoices for concrete repair work at the Plaza Garage. (*Id*., ¶¶30-31).

21. Denison alleges the "arrangement" between Denison and Most "was a contract in which Most provided expert services through its Principal and performed work on the concrete at the Plaza Garage. In turn, Denson paid Most at agreed upon sums." (*Id*., ¶32).

22. Denison alleges "Tests (including chain dragging performed in September of 2016) revealed that some of the concrete flooring … [at] the Plaza Garage was delaminated" and when Denison's engineer removed the upper layer of concrete from a delaminated and appalled area in the fall of 2016, it revealed previously concealed "defects in the manner in which Most maintained and installed the Post-Tensioning Tendons and other materials under the top layer of concrete." (*Id*., ¶¶35, 39-41).

23. Denison alleges that in the fall of 2016, its engineer examined an area where the concrete had become delaminated and spalled. This was discovered by removing "the upper layer of the concrete the reveal the contents below it." (*Id*., ¶39).

24. Denison also alleges additional areas of the Plaza Garage contained similarly defective work. (*Id*., ¶¶45, 48, 51).

25. Denison identified what it alleges are defects in Most's work:

   a. Post-Tensioning Tendons with sheathing damage and corrosion of the strands beneath;

   b. Post-Tensioning Tendons that had become corroded, cut, or sliced;

   c. Post-Tensioning Tendons that were removed in areas of concrete patch repairs;

   d. Feathering of concrete patches;

   e. Improper sealant of replacement covering on Post-Tension Tendons that allowed moisture to seep in and damage the Tendons;

   f. Nail holding down Post-Tensioning Tendons, which damaged the sheathing, allowed water penetration, and corrosion of the Tendons;

   g. Use of tape on Post Tensioning Tendons; and

    h.  Improper use of epoxy.

(*Id.*, ¶49).

  26.  It is further alleged Most did not tell Denison of the defective conditions at the Plaza Garage. (*Id.*, ¶59).

  27.  Denison alleges it was damaged as a result of paying Most for its defective work, paying to repair the defective work, and lost income from inability to rent parking spaces during the repairs in an amount exceeding $17 million. (*Id.*, ¶¶60-61).

  28.  Denison alleges in Count I that Most breached the contract by performing work that left Plaza Garage in a defective condition. (*Id.*, ¶66).

  29.  In the alternative, Count II asserts Unjust Enrichment and seeks to recover amounts Denison paid to Most for its defective work. (*Id.*, ¶70).

  30.  Count III asserts Negligence claiming:

    a.  Most owed Denizen a duty of care to identify any areas of the garage needing repairs and to see that such repairs were properly made;

    b.  Most maintained a fiduciary and confidential relationship with Denison;

    c.  Most breached its duty of care by performing defective work covering up the defective work without repairing it, and making misrepresentations and omissions about the work at and condition of Plaza Garage; and

    d.  Most's breach was the proximate and actual cause of the damage incurred by Denison.

*(Id.*, ¶¶75-79).

  31.  Count IV asserts Constructive Fraud against Most alleging it engaged in various intentional acts. (*Id.*, ¶¶81-89).

**INFORMATION OUTSIDE OF THE COMPLAINT**

32. Based on expert reports and discovery taken in the Underlying Action, Harleysville makes the following additional allegations.

33. The Plaza Garage was constructed in 1976.

34. There is no evidence that "property damage" occurred at the Plaza Garage prior to late 2016.

35. Most was retained by Denison from 1992 through 2012.

36. Most did not perform any work at Plaza Garage after 2012.

37. Upon receiving Most's annual report of recommended repairs, Denison was solely responsible for determining which repairs would be undertaken and when.

38. Most did not have authority to make repairs unless specifically authorized by Denison.

39. Denison did not authorize Most to undertake all repairs it recommended.

40. In addition to Most, Denison engaged other parties to work on the concrete at Plaza Garage and hired independent engineers to inspect the facility.

41. Despite being warned of potential damage to the building if Denison failed to follow a regular maintenance program, it did not undertake regular maintenance at the Plaza Garage. For example, no one provided maintenance and repair services at the Plaza Garage between 2012 and 2016.

42. Denison and Most are not aware of any property damage caused by Most that occurred during the 2001–2008 period covered by the Policies.

43. Denison first alerted Most to the alleged problems at Plaza Garage on or around March 16, 2018.

44. On May 22, 2018, Harleysville advised Most it was aware of the March 16, 2018 letter from Denison, that included a draft copy of the complaint in the Underlying Action.

45. After an investigation, Harleysville agreed to defend Most in the Underlying Action under a reservation of rights on May 22, 2018, and has continued to do so. A true and correct copy of the initial reservation of rights letter issued by Harleysville is attached here to as **Exhibit 9**.

## THE POLICIES

46. The 2001-2002 Policy provides commercial general liability coverage form CG 00 01 07 98. The 2002-2003 and the 2004-2005 Policies use commercial general liability coverage forms CG 00 01 10 01, and the 2005-2006, 2006-2007, 2007-2008 Policies employ form CG 00 01 12 04. *See* **Exhibits 1 – 7.**

47. The Policy for the 2003-2004 period cannot be located, but it is assumed to be on coverage form CG 00 01 10 01, which controlled the previous and following policy years.

48. The Policies provide:

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
>     **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. * * *
>
>     **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
>         **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place

> > in the "coverage territory";
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
>
> \* \* \*

**2. Exclusions**

This insurance does not apply to:

\*\*\*

> **j.** **Damage To Property**
>
> "Property damage" to:
>
> \*\*\*
>
> **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> \*\*\*
>
> Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".
>
> \*\*\*
>
> **l.** **Damage To Your Work**
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

9

\*\*\*

## SECTION V – DEFINITIONS

\*\*\*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*

**16.** "Products-completed operations hazard":

    a. Includes all "bodily injury" and :property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except"

\*\*\*

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be

                deemed to occur at the time of the "occurrence" that caused it.

***

    **21**.    "Your work" means[1]:

        **a.**    Work or operations performed by you or on your behalf; and

        **b.**    Materials, parts or equipment furnished in connection with such work or operations.

    "Your work" includes:

        **a.**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **b.**    The providing of or failure to provide warnings or instructions.

***

49.    The 2001-2002 Policy also contains the following endorsement on form CG 00 57 09 99, which provides in pertinent part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMENDMENT OF INSURING AGREEMENT –
KNOWN INJURY OR DAMAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph **1. Insuring Agreement of Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**1.**    **Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property

---

[1] Forms CG 00 01 10 01 and CG 00 01 12 04 contain identical language, but the punctuation differs.

damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.

\*\*\*

**b.**   This insurance applies to "bodily injury" and "property damage" only if:

**(1)**   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**   The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**   Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

\*\*\*

## COUNT I
### (Property Damage Did Not Occur During the Harleysville Policy Periods)

50.   Harleysville incorporates by reference Paragraphs 1 to 49 as if fully set forth herein.

51.   The Policies cover "property damage" that "occurs during the policy period."

52.   The Harleysville Policies were in effect between June 1, 2001 and June 1, 2008.

53.   Despite expert reports and other facts developed in the Underlying Action, there is nothing establishing that "property damage" occurred between June 1, 2001 and June 1, 2008, caused by the work performed by Most at the Plaza Garage.

54.   Accordingly, because "property damage" did not occur during the Harleysville Policy periods, Harleysville does not owe a duty to defend or indemnify Most in the Underlying Action.

WHEREFORE, Harleysville respectfully request this Court enter judgment in its favor and against Most (i) declaring Harleysville does not owe a duty to defend or indemnify Most in the Underlying Action under the Policies; and (ii) granting such other and further relief as this Court may deem just and proper under the circumstances.

## COUNT II
### (Any Property Damage During Harleysville's Policy Periods Was Not Caused by an Occurrence)

55. Harleysville incorporates by reference Paragraphs 1 to 49 as if fully set forth herein.

56. The Policies cover "property damage" caused by an "occurrence."

57. "Occurrence" is defined in the Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

58. Neither the allegations of the Underlying Action nor the other facts developed to date establish that Most's conduct constituted an "occurrence" within the meaning of the Policies that resulted in "property damage" during Harleysville's Policy periods. Accordingly, since there is no "property damage" caused by an "occurrence," Harleysville does not have a duty to defend or indemnify Most in the Underlying Action.

WHEREFORE, Harleysville respectfully request this Court enter judgment in its favor and against Most: (i) declaring Harleysville does not owe a duty to defend or indemnify Most in the Underlying Action under the Policies; and (ii) granting such other and further relief as this Court may deem just and proper under the circumstances.

## COUNT III
### (In the Alternative, Exclusion (l) Applies)

59. Harleysville incorporates by reference Paragraphs 1 to 49 as if fully set forth herein.

60. The Policies exclude coverage for property damage to "your work" "arising out of it or any part of it and included in the 'products-completed operations hazard'."

61. "Your work" as defined in the Policies includes work performed by Most, representations **"**made at any time with respect to the fitness, quality, durability, performance or use of" Most's work and the failure to provide warnings or instructions.

62. Strictly in the alternative, if "property damage" occurred during the Harleysville's Policy periods, it would be excluded from coverage because it arose from Most's work, its misrepresentations related to that work, or its failure to provide proper warnings.

63. Accordingly, Harleysville does not owe a duty to defend or indemnify Most under the Policies because any alleged loss is excluded under Exclusion (l).

64. In the alternative, the claim is barred by Exclusions j(5) and j(6).

WHEREFORE, Harleysville respectfully request this Court enter judgment in its favor and against Most: (i) declaring Harleysville does not owe a duty to defend or indemnify Most in the Underlying Action under the Policies; and (ii) granting such other and further relief as this Court may deem just and proper under the circumstances.

## COUNT IV
### (In the Alternative, Exclusions (j)(5) and (6) Damage to Property Apply)

65. Harleysville incorporates by reference Paragraphs 1 to 49 as if fully set forth herein.

66. The Policies do not cover "property damage" to "that particular part of real property on which you . . . are performing operations, if the 'property damage' arises out of those operations" or "that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it (unless included in the product-completed operations hazard).

67. Denison seeks damages caused by Most's work at the Plaza Garage or because Most's work was incorrectly performed and had to be repaired or replaced.

68. Any "property damage" occurring during the policy periods caused by Most's work or because its work was improperly performed and needed to be repaired or replaced is excluded from coverage under Exclusion (j)(5) or (j)(6).

69. Accordingly, Harleysville does not owe a duty to defend or indemnify Most under the Policies because any "property damage" is barred by Exclusions j(5) and j(6).

WHEREFORE, Harleysville respectfully request this Court enter judgment in its favor and against Most: (i) declaring Harleysville does not owe a duty to defend or indemnify Most in the Underlying Action under the Policies; and (ii) granting such other and further relief as this Court may deem just and proper under the circumstances.

Respectfully submitted,

/s/Edward F. Harney, Jr.
Edward F. Harney, Jr., Attorney #17365-45
HUME SMITH GEDDES GREEN & SIMMONS, LLP
54 Monument Circle, 4th Floor
Indianapolis, Indiana 46204-2996
Telephone: (317) 632-4402
Facsimile: (317) 632-5595
eharney@humesmith.com

Attorney for Plaintiff, Harleysville Lake States Insurance Company