**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| HARLEYSVILLE LAKE STATES INSURANCE COMPANY, ) ) ) *Plaintiff,* ) ) v. ) ) CARL E. MOST & SON, INC., DENISON, INC., ) DENISON PARKING, INC. AND INDIANA ) INSURANCE COMPANY, ) ) *Defendants.* ) | Case No.: 1:22-cv-01822 |

**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

Plaintiff, Harleysville Lake States Insurance Company ("Harleysville"), by its undersigned counsel, Hume Smith Geddes Green & Simmons, LLP and Novak Law Offices, for its Complaint for Declaratory Judgment and Other Relief against Defendants, Carl E. Most & Son, Inc. ("Most"), Denison, Inc., and Denison Parking, Inc. (collectively "Denison"), and Indiana Insurance Company ("Indiana") respectfully alleges as follows:

**NATURE OF ACTION**

1. This is an insurance coverage action seeking declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Harleysville seeks a determination of the parties' rights and obligations under Commercial Business Policies numbered LS-5S-90173882-1/000, effective June 1, 2001 through June 1, 2002; LS-5S-90173882-2/000, effective June 1, 2002 through June 1, 2003; MPA9G5989, effective June 1, 2003 through June 1, 2004; MPA9G5989, effective June 1, 2004 through June 1, 2005; MPA9G5989, effective June 1, 2005 through June 1, 2006; MPA9G5989, effective June 1, 2006 through June 1, 2007; and MPA9G5989, effective June 1, 2007 through

June 1, 2008 that it issued to Most ("Harleysville Policies") with respect to its continuing defense and indemnity obligations to Most following a judgment entered against it in a lawsuit captioned *Denison, Inc. and Denison Parking, Inc. v. Carl E. Most & Son, Inc.*, No. 49D05-1809-PL-037971, Marion County, Indiana Superior Court ("Underlying Action"). The Harleysville Policies, or as many pages as Harleysville could locate for each year, are attached hereto as **Exhibits 1 through 6.**

2.  At all pertinent times, Harleysville has defended Most in the Underlying Action pursuant to a reservation of rights under the Harleysville Policies. Among other coverages, the Harleysville Policies provide insurance for "damages because of 'property damage' caused by an 'occurrence' to which the insurance applies." Further, the insurance applies to "property damage" only if the "property damage" occurs during the "policy period."

3.  The parties dispute coverage under the Harleysville Policies in connection with the judgment entered in the Underlying Action against Most on November 21, 2022. Specifically, Harleysville asserts there is no evidence that "property damage" occurred during its policy periods from June 1, 2001 through June 1, 2008. Further, the breach of contract verdict returned by the jury in the Underlying Action does not represent an "occurrence" within the meaning of the Harleysville Policies.

**PARTIES/DIVERSITY**

4.  Harleysville is a Michigan domesticated insurance company with its principal place of business in Columbus, Ohio.

5.  Most is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Since Most is winding down its operations, Harleysville is willing to dismiss Most

from this action so long as it stipulates and agrees to be bound by any judgment entered or settlement reached herein.

6. Denison Inc. is an Indiana corporation with its principal place of business in Indianapolis, Indiana.

7. Denison Parking, Inc. is an Indiana corporation with its principal place of business in Indianapolis, Indiana.

8. Indiana Insurance Company is an Indiana domesticated insurance company with its principal place of business in Indianapolis, Indiana.

9. Indiana is a nominal party. Upon information and belief, Indiana issued policies containing commercial general liability coverage to Most, which were in effect from June 1, 2008 through June 1, 2018. Indiana has been joined solely to be bound by the judgment rendered in this cause and no specific relief is sought against it. Harleysville is willing to dismiss Indiana from this action so long as it stipulates and agrees to be bound by any judgment entered or settlement reached herein.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

11. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (2) because Most and Denison are Indiana corporations with its principal place of business in Indianapolis, Indiana and the conduct at issue giving rise to the underlying lawsuit took place in Indianapolis, Indiana.

## THE UNDERLYING ACTION AND JUDGMENT

12. On September 21, 2018, Denison filed the Underlying Action. A true and correct copy of the complaint in the Underlying Action is attached as **Exhibit 7**.

13. The Underlying Action alleged that Denison owns and operates parking facilities in Indianapolis, including a multi-level parking garage at 109 South Capital Avenue known as "Plaza Garage." (Complt., ¶¶7-9).

14. Denison alleged, "for many years starting on the mid-1990s," it retained Most's services to inspect its parking facilities, and that Most held itself out as an expert in the inspection, repair, and maintenance of said facilities and reinforced concrete. (*Id*., ¶¶10-11).

15. Denison alleged it retained Most to inspect, repair, and maintain the reinforced concrete at Plaza Garage in light of its reputation. (*Id*., ¶13).

16. Denison also alleged it relied on Most to inspect and identify problems with the reinforced concrete at Plaza Garage and that Most "had sole responsibility for those inspections." (*Id*., ¶¶14-15, 17).

17. The Underlying Action claimed that Most performed annual inspections and provided annual reports detailing repairs, maintenance, and other work necessary on the garage that also recommended which issues were priorities to address. (*Id*., ¶¶18-19, 21).

18. The Underlying Action claimed that once the recommendations were approved by Denison, Most was allegedly responsible for repairing the reinforced concrete and ensuring the quality of the repairs. (*Id*., ¶25).

19. Denison alleged that it paid millions to Most based on invoices submitted by Most for its services, including invoices for concrete repair work at the Plaza Garage. (*Id*., ¶¶30-31).

20. Denison alleged the "arrangement" between Denison and Most "was a contract in which Most provided expert services through its Principal and performed work on the concrete at the Plaza Garage. In turn, Denson paid Most at agreed upon sums." (*Id*., ¶32).

21. Denison alleged "Tests (including chain dragging performed in September of 2016) revealed that some of the concrete flooring … [at] the Plaza Garage was delaminated" and when Denison's engineer removed the upper layer of concrete from a delaminated and appalled area in the fall of 2016, it revealed previously concealed "defects in the manner in which Most maintained and installed the Post-Tensioning Tendons and other materials under the top layer of concrete." (*Id*., ¶¶35, 39-41).

22. Denison alleged that in the fall of 2016, its engineer examined an area where the concrete had become delaminated and spalled. This was discovered by removing "the upper layer of the concrete the reveal the contents below it." (*Id*., ¶39).

23. Denison also alleged additional areas of the Plaza Garage contained similarly defective work. (*Id*., ¶¶45, 48, 51).

24. Denison allegedly identified what it alleges are defects in Most's work:

    a. Post-Tensioning Tendons with sheathing damage and corrosion of the strands beneath;

    b. Post-Tensioning Tendons that had become corroded, cut, or sliced;

    c. Post-Tensioning Tendons that were removed in areas of concrete patch repairs;

    d. Feathering of concrete patches;

    e. Improper sealant of replacement covering on Post-Tension Tendons that allowed moisture to seep in and damage the Tendons;

    f.  Nail holding down Post-Tensioning Tendons, which damaged the sheathing, allowed water penetration, and corrosion of the Tendons;

    g.  Use of tape on Post Tensioning Tendons; and

    h.  Improper use of epoxy.

(*Id.*, ¶49).

  25.  Denison alleged it was damaged as a result of paying Most for its defective work, paying to repair the defective work, and lost income from inability to rent parking spaces during the repairs in an amount exceeding $17 million. (*Id.*, ¶¶60-61).

  26.  Denison alleged in Count I that Most breached the contract by performing work that left Plaza Garage in a defective condition. (*Id.*, ¶66).

  27.  In the alternative, Count II sought damages for Unjust Enrichment and to recover amounts Denison paid to Most for its defective work. (*Id.*, ¶70).

  28.  Count III asserted Negligence claiming:

    a.  Most owed Denizen a duty of care to identify any areas of the garage needing repairs and to see that such repairs were properly made;

    b.  Most maintained a fiduciary and confidential relationship with Denison;

    c.  Most breached its duty of care by performing defective work covering up the defective work without repairing it, and making misrepresentations and omissions about the work at and condition of Plaza Garage; and

    d.  Most's breach was the proximate and actual cause of the damage incurred by Denison.

(*Id.*, ¶¶75-79).

29. Count IV asserted Constructive Fraud against Most alleging it engaged in various intentional acts. (*Id.*, ¶¶81-89).

30. On November 14, 2022, the Underlying Action proceeded to trial before a jury and the Honorable John M.T. Chavis, II. On November 18, 2022, the jury returned a verdict finding that Most breached the contract with Denison and awarding Denison damages for breach of contract in the amount of $8 million. A copy of the judgment entered on November 21, 2022 is attached hereto as **Exhibit 8**.

31. On the negligence count, however, the jury found Denison to be 51% negligent. The negligence jury verdict form stated "[b]ecause plaintiffs' fault is greater than 50%, we therefore decided in favor of the Defendant Carl E. Most & Son, Inc. and against the Plaintiffs Denison, Inc. and Denison Parking. Inc." Accordingly, the jury did not award any damages to Denison arising from its negligence-based tort count. The jury did not award any other damages or relief.

## INFORMATION OUTSIDE OF THE COMPLAINT

32. Based on expert reports, discovery and testimony and stipulated exhibits presented at trial, Harleysville makes the following additional allegations.

33. The Plaza Garage was constructed in 1976.

34. There is no evidence that "property damage" occurred at the Plaza Garage prior to late 2016.

35. Most was retained by Denison from 1992 through 2012.

36. Most did not perform any work at Plaza Garage after 2012.

37. Upon receiving Most's annual report of recommended repairs, Denison was solely responsible for determining which repairs would be undertaken and when.

38. Most did not have authority to make repairs unless specifically authorized by Denison.

39. Denison did not authorize Most to undertake all repairs it recommended.

40. In addition to Most, Denison engaged other parties to work on the concrete at Plaza Garage and hired independent engineers to inspect the facility.

41. Denison and Most are not aware of any property damage caused by Most that occurred during the 2001–2008 period covered by the Policies.

42. Denison first alerted Most to the alleged problems at Plaza Garage on or around March 16, 2018.

43. On May 22, 2018, Harleysville advised Most it was aware of the March 16, 2018 letter from Denison, that included a draft copy of the complaint in the Underlying Action.

44. On May 22, 2018, Harleysville agreed to defend Most in the Underlying Action under a reservation of rights and defended Most during the trial.

## POLICIES ISSUED TO MOST FROM 1992 THROUGH 2018

### A. The Harleysville Policies

45. Harleysville insured Most from June 1, 2001 through June 1, 2008.

46. The 2001-2002 Harleysville Policy provides commercial general liability coverage form CG 00 01 07 98. The 2002-2003 and the 2004-2005 Harleysville Policies use commercial general liability coverage forms CG 00 01 10 01, and the 2005-2006, 2006-2007, 2007-2008 Harleysville Policies employ form CG 00 01 12 04. *See* **Exhibits 1 – 6.**

47. The Harleysville Policy for the 2003-2004 period cannot be located, but it is assumed to be on coverage form CG 00 01 10 01, which controlled the previous and following policy years.

48. The Harleysville Policies provide:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  \* \* \*

    b.  This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    \* \* \*

2. **Exclusions**

    This insurance does not apply to:

    \*\*\*

    b.  **Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **(1)** That the insured would have in the absence of the contract or agreement; or

    **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for

9

> the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
>
> **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
>
> **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.
>
> \*\*\*

**j.   Damage To Property**

"Property damage" to:

> \*\*\*
>
> **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> \*\*\*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

> \*\*\*

**l.   Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

10

>This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

***

**SECTION V – DEFINITIONS**

***

**9.** "Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **f.** does not include that part of any contract or agreement:

        **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and

11

                affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    **(2)**    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)**    Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(b)**    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)**    Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

                \*\*\*

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

                \*\*\*

16.    "Products-completed operations hazard":

    a.    Includes all "bodily injury" and :property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except"

                \*\*\*

17.    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

      **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

***

**21.** "Your work" means[1]:

    **a.**    Work or operations performed by you or on your behalf; and

    **b.**    Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

    **a.**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **b.**    The providing of or failure to provide warnings or instructions.

***

## B.   Indiana Policies And Lost Or Missing Policies

49. Harleysville does not know the identity of Most's commercial general liability insurer(s) for the policy periods from 1992 through June 1, 2001. Upon information and belief, Most was insured during those periods but the records were lost or destroyed.

50. Upon information and belief, Indiana issued commercial general liability policies to Most for the policy periods from June 1, 2008 through June 1, 2018.

51. Indiana participated with Harleysville in defending Most in the Underlying Action.

---

[1] Forms CG 00 01 10 01 and CG 00 01 12 04 contain identical language, but the punctuation differs.

13

## COUNT I
### (Property Damage Did Not Occur During the Harleysville Policy Periods)

52. Harleysville incorporates by reference Paragraphs 1 to 51 as if fully set forth herein.

53. The Harleysville Policies provide coverage for "property damage" that "occurs during the policy period."

54. The Harleysville Policies were in effect from June 1, 2001 until June 1, 2008.

55. Most and/or Denison (as the judgment creditor standing in the insured's shoes) have the burden of proving that "property damage" occurred during the Harleysville policy periods.

56. Despite expert reports and other facts developed in the Underlying Action, no evidence has been produced showing that "property damage" caused by Most's work at the Plaza Garage occurred during the Harleysville policy periods.

57. Accordingly, because "property damage" did not occur during the Harleysville policy periods, Harleysville does not have a duty to indemnify Most for the judgment entered in the Underlying Action nor does it owe a continuing duty to defend Most in the Underlying Action.

WHEREFORE, Harleysville respectfully requests this Court enter judgment in its favor and against Denison and Most (i) declaring Harleysville does not owe a duty to defend Most in the Underlying Action under the Harleysville Policies; (ii) declaring Harleysville does not have a duty to indemnify Most under the Harleysville Policies for the judgment entered against Most in the Underlying Action; and (iii) granting such other and further relief as this Court may deem just and proper under the circumstances.

## COUNT II
### (Breach of Contract is not an Occurrence)

58. Harleysville incorporates by reference Paragraphs 1 to 51 as if fully set forth herein.

59. The Harleysville Policies provide coverage for "property damage" caused by an "occurrence."

60. "Occurrence" is defined in the Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

61. Judgment was entered against Most in the Underlying Action for breach of contract for failure to perform a contractual duty, which is a professional error and omission and not an "occurrence" under Indiana law. Accordingly, Harleysville does not owe a duty to indemnify Most in the Underlying Action, nor does it owe a continuing duty to defend it in the Underlying Action.

WHEREFORE, Harleysville respectfully requests this Court enter judgment in its favor and against Denison and Most (i) declaring Harleysville does not owe a duty to defend Most in the Underlying Action under the Harleysville Policies; (ii) declaring Harleysville does not have a duty to indemnify Most under the Harleysville Policies for the judgment entered against Most in the Underlying Action; and (iii) granting such other and further relief as this Court may deem just and proper under the circumstances.

## COUNT III
### (In the Alternative, Exclusion (b) Applies)

62. Harleysville incorporates by reference Paragraphs 1 to 51 as if fully set forth herein.

63. In the event the Court concludes there is "property damage" caused by an "occurrence" during Harleysville's policy periods, the Policies exclude coverage for Contractual Liability, specifically, "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

64. If the judgment entered in the Underlying Action against Most is damages for "property damage," Most is obligated to pay those damages by reason of assumption of liability in a contract and is therefore excluded.

65. The exceptions to the exclusion for liability that the "insured would have in the absence of the contract or agreement" and "assumed in a contract or agreement that is an 'insured contract'" do not apply.

66. Accordingly, Harleysville does not owe a duty to indemnify Most in the Underlying Action, nor does it owe a continuing duty to defend it in the Underlying Action.

WHEREFORE, Harleysville respectfully requests this Court enter judgment in its favor and against Denison and Most (i) declaring Harleysville does not owe a duty to defend Most in the Underlying Action under the Harleysville Policies; (ii) declaring Harleysville does not have a duty to indemnify Most under the Harleysville Policies for the judgment entered against Most in the Underlying Action; and (iii) granting such other and further relief as this Court may deem just and proper under the circumstances.

## COUNT IV
**(In the Alternative, Exclusion (l) Applies)**

67. Harleysville incorporates by reference Paragraphs 1 to 51 as if fully set forth herein.

68. The Policies exclude coverage for property damage to "your work" "arising out of it or any part of it and included in the 'products-completed operations hazard'."

16

69. "Your work" as defined in the Policies includes work performed by Most, representations **"**made at any time with respect to the fitness, quality, durability, performance or use of" Most's work and the failure to provide warnings or instructions.

70. Strictly in the alternative, if "property damage" occurred during the Harleysville's Policy periods, it would be excluded from coverage because it arose from Most's work, any alleged misrepresentations related to that work, and any failure to provide proper warnings or instructions related to that work.

71. Accordingly, Harleysville does not have a duty to indemnify Most under the Policies because any alleged loss is excluded under Exclusion (l), nor does it owe a continuing duty to defend Most in the Underlying Action.

WHEREFORE, Harleysville respectfully requests this Court enter judgment in its favor and against Denison and Most (i) declaring Harleysville does not owe a duty to defend Most in the Underlying Action under the Harleysville Policies; (ii) declaring Harleysville does not have a duty to indemnify Most under the Harleysville Policies for the judgment entered against Most in the Underlying Action; and (iii) granting such other and further relief as this Court may deem just and proper under the circumstances.

## COUNT V
**(In the Alternative, Exclusions (j)(5) And (6) Damage To Property Apply)**

72. Harleysville incorporates by reference Paragraphs 1 to 51 as if fully set forth herein.

73. The Policies do not cover "property damage" to "that particular part of real property on which you . . . are performing operations, if the 'property damage' arises out of those operations" or "that particular part of any property that must be restored, repaired or replaced

because "your work" was incorrectly performed on it (unless included in the product-completed operations hazard).

74. Denison sought damages and a judgment was entered against Most in the Underlying Action for damages caused by Most's work at the Plaza Garage or because Most's work was incorrectly performed and had to be repaired or replaced.

75. Any "property damage" occurring during the policy periods caused by Most's work or because its work was improperly performed and needed to be repaired or replaced is excluded from coverage under Exclusion (j)(5) or (j)(6).

76. Accordingly, Harleysville does not owe a duty to indemnify Most under the Policies because any "property damage" is barred by Exclusions j(5) and j(6), nor does Harleysville owe a continuing duty to defend Most in the Underlying Action.

WHEREFORE, Harleysville respectfully requests this Court enter judgment in its favor and against Denison and Most (i) declaring Harleysville does not owe a duty to defend Most in the Underlying Action under the Harleysville Policies; (ii) declaring Harleysville does not have a duty to indemnify Most under the Harleysville Policies for the judgment entered against Most in the Underlying Action; and (iii) granting such other and further relief as this Court may deem just and proper under the circumstances.

## COUNT VI
**(In the Alternative, Pro Rata Allocation Of The Judgment From 1992 Through Late 2016)**

77. Harleysville incorporates by reference Paragraphs 1 to 51 as if fully set forth herein.

78. Most performed work at the Plaza Garage beginning in 1992 through 2012.

79. The damage was discovered at the Plaza Garage in the Fall of 2016.

80. The Harleysville and Indiana Policies provide that they will pay "those sums" that the Most "becomes legally obligated to pay as damages because of … 'property damage.'"

81. As set forth in Count I, Harleysville alleges that the proper method of allocation is that the insured (or Denison, as the judgment creditor) has the burden of proving "property damage" occurred during Harleysville's policy periods. In the alternative, should the Court determine there was continuing "property damage" at the Plaza Garage, and therefore a "continuous trigger" of coverage, the Court should apply a pro rata allocation of damages beginning in 1992 through the time "property damage" was discovered in late 2016. In other words, the Court should include the lost or destroyed policy periods and the Indiana policy periods when determining allocation.

WHEREFORE, in the alternative, Harleysville respectfully requests this Court enter judgment in its favor and against Most and Denison (i) holding an injury-in-fact occurring to property during Harleysville policy periods is the proper allocation methodology; (ii) alternatively, holding that a pro-rata allocation of the judgment should be applied from 1992 through late 2016; and (iii) granting such other and further relief as this Court may deem just and proper under the circumstances.

DATED:  December  1, 2022        Respectfully Submitted,

        HARLEYSVILLE LAKE STATES INSURANCE COMPANY


        By: /s/Edward F. Harney, Jr.
            One of Its Attorneys


Edward F. Harney, Jr.
Hume Smith Geddes Green & Simmons, LLP
54 Monument Circle, Fl 4
Indianapolis, IN 46204
317/632.4402 (voice)
eharney@humesmith.com

Neal R. Novak, admitted Pro Hac Vice
Colleen M. Costello, Pro Hac Vice to be Filed
Novak Law Offices
33 N. LaSalle Street, Suite 1900
Chicago, Illinois 60602
novak@novakjuris.com
costello@novakjuris.com