UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| HARLEYSVILLE LAKE STATES INSURANCE COMPANY, | ) ) ) | |
| *Plaintiff,* | ) ) | No. 1:22-cv-01822-JMS-MG |
| *vs.* | ) ) ) | |
| CARL E. MOST & SON, INC., DENISON, INC., DENISON PARKING, INC., and INDIANA INSURANCE COMPANY, | ) ) ) ) | |
| *Defendants.* | ) | |

# **ORDER**

Defendant Carl E. Most & Son, Inc. ("Most") provided inspection, repair, and maintenance services to Defendants Denison, Inc. and Denison Parking, Inc. (collectively, "Denison") related to parking garages owned by Denison. After a dispute arose regarding damage to a garage owned by Denison, Denison sued Most ("the Underlying Lawsuit") and ultimately obtained a jury verdict in its favor. Plaintiff Harleysville Lake States Insurance Company ("Harleysville") initiated this litigation against Most, Denison, and Defendant Indiana Insurance Company ("Indiana Insurance"), seeking a declaration that it did not owe a duty to defend or indemnify Most in the Underlying Lawsuit. [Filing No. 1.] Most has filed a Motion to Realign Indiana Insurance Company as a Plaintiff, [Filing No. 37], and a Motion to Dismiss for Lack of Subject Matter Jurisdiction, [Filing No. 38], which are now ripe for the Court's decision.

# I.
## BACKGROUND

The following are the allegations set forth in Harleysville's Amended Complaint for Declaratory Judgment and Other Relief, which the Court accepts as true for purposes of the pending motions.

### A. The Harleysville Insurance Policies

Harleysville issued commercial general liability policies to Most that were effective from June 1, 2001 through June 1, 2008 ("the Harleysville Policies"). [Filing No. 8 at 8.] The Harleysville Policies provided coverage for bodily injury and property damage liability, subject to certain exclusions. [Filing No. 8 at 9-13; Filing No. 8-1 through Filing No. 8-9.] Harleysville does not know who issued commercial general liability insurance to Most from 1992 through June 1, 2001, when Harleysville began insuring Most. [Filing No. 8 at 13.]

### B. The Indiana Insurance Policies

Indiana Insurance issued commercial general liability policies to Most for the policy periods from June 1, 2008 through June 1, 2018 ("the Indiana Insurance Policies"). [Filing No. 8 at 13.]

### C. The Underlying Lawsuit

On September 21, 2018, Denison filed the Underlying Lawsuit, alleging that Denison owns and operates parking facilities in Indianapolis, Indiana, including a multi-level parking garage at 109 South Capital Avenue ("Plaza Garage") that was constructed in 1976. [Filing No. 8 at 4; Filing No. 8 at 7.] Denison alleged that it retained Most in 1992, based on Most's reputation, to inspect, repair, and maintain the reinforced concrete at Plaza Garage. [Filing No. 8 at 4; Filing No. 8 at 7.]

Denison alleged that it paid millions of dollars to Most through 2012 based on invoices Most submitted for its services, including invoices for concrete repair work at Plaza Garage.

[Filing No. 8 at 4; Filing No. 8 at 7.] Denison alleged that Most did not have authority to make repairs unless specifically authorized by Denison, and Denison did not authorize Most to undertake all of the repairs that Most recommended. [Filing No. 8 at 8.] Denison alleged that it also engaged other parties to work on the concrete at Plaza Garage and hired independent engineers to inspect the facility. [Filing No. 8 at 8.] Denison alleged that in the fall of 2016, its engineer identified multiple areas at Plaza Garage where the concrete had become delaminated and spalled. [Filing No. 8 at 5.]

In the Underlying Lawsuit, Denison sought to recover over $17 million in damages as a result of paying Most for its defective work, paying to repair the defective work, and lost income from the inability to rent parking spaces during the repairs. [Filing No. 8 at 6.] Denison asserted claims for breach of contract, unjust enrichment, negligence, and constructive fraud against Most and, on November 14, 2022, a jury found Most liable for breach of contract and awarded Denison $8 million. [Filing No. 8 at 6-7.] The jury also found that Denison was 51% negligent so did not award any damages to Denison on its negligence claim or any of its other claims. [Filing No. 8 at 7.]

  **D.  This Lawsuit**

Harleysville initiated this litigation on September 15, 2022, [Filing No. 1], and filed the operative Amended Complaint on December 1, 2022, [Filing No. 8]. Harleysville names Most, Denison, and Indiana Insurance as Defendants and alleges that the Court has diversity jurisdiction because it is a citizen of Michigan and Ohio; Most, Denison, and Indiana Insurance are citizens of Indiana; and the amount in controversy exceeds $75,000, exclusive of interest and costs. [Filing No. 8 at 2-3.] Harleysville seeks declarations that various provisions and exclusions in the Harleysville Policies preclude coverage and that it does not have a duty to defend or indemnify

Most in the Underlying Lawsuit. [Filing No. 8.] It also alleges that Indiana Insurance is a nominal party to the lawsuit and "has been joined solely to be bound by the judgment rendered in this cause and no specific relief is sought against it," and asserts that if coverage is found under the Harleysville Policies, any damages should be allocated pro rata with the Indiana Insurance Policies and any unknown insurers. [Filing No. 8 at 3; Filing No. 8 at 18-19.]

On January 13, 2023, Indiana Insurance asserted a counterclaim against Harleysville and cross-claims against Most and Denison, seeking declarations that it does not have a duty to defend or indemnify Most in connection with the Underlying Lawsuit. [Filing No. 25 at 40-42.] It alleges that, in the alternative and if the Court finds that there is coverage, the Court should apply a pro rata allocation of damages between Indiana Insurance, Harleysville, and any unknown insurers beginning in 1992 through the time the property damage was discovered in 2016. [Filing No. 25 at 42.]

On January 20, 2023, Denison asserted a counterclaim against Harleysville and a cross-claim against Indiana Insurance, alleging that it stands in Most's shoes as a judgment creditor and seeking a declaration that Harleysville and Indiana Insurance are obligated to indemnify Most in the Underlying Lawsuit and alleging that Harleysville and Indiana Insurance have breached their contracts with Most. [Filing No. 29 at 27-28.]

Most has now filed a Motion to Realign Indiana Insurance Company as a Plaintiff, [Filing No. 37], and – because a realignment would destroy diversity of citizenship – a Motion to Dismiss for Lack of Subject Matter Jurisdiction, [Filing No. 38]. Indiana Insurance and Harleysville both oppose those motions. [Filing No. 44; Filing No. 48; Filing No. 49.]

## II.
### MOTION TO REALIGN INDIANA INSURANCE COMPANY AS A PLAINTIFF

**A.    Standard of Review**

"Realignment [of parties] is proper when the court finds that no actual, substantial controversy exists between parties on one side of the dispute and their named opponents." *American Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 149 (7th Cir. 1981). The "generally accepted test for the proper alignment of parties employed by the federal courts is whether the parties with the same 'ultimate interests' in the outcome of the action are on the same side of the litigation." 13E CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3607 (2009). "In conducting its inquiry, the court may look beyond the pleadings and consider the nature of the dispute in order to assess the parties' real interests." *Trane*, 657 F.2d at 149 (citing *Green v. Green*, 218 F.2d 130 (7th Cir. 1954)).

**B.    Discussion**

In support of its Motion to Realign,[1] Most argues that "[t]here is no dispute, let alone a 'substantial conflict,' between Harleysville and Indiana Insurance," and that Harleysville does not set forth any claims against Indiana Insurance and even states in the Amended Complaint that Indiana Insurance is a nominal party. [Filing No. 39 at 12.] Most asserts that both Harleysville

---

[1] Denison filed a "Notice of Joinder in Most's Motion to Realign (Dkt. 37) and Motion to Dismiss (Dkt. 38)," but titled it in the Court's electronic filing system as "Motion for Joinder in Most's Motion to Realign and Motion to Dismiss." [Filing No. 43.] Harleysville states in a footnote in its opposition to the Motion to Realign and Motion to Dismiss that "whether Denison may properly join the [Motion to Realign and Motion to Dismiss] at this point in the proceedings is questionable," but does not expand on that statement. [Filing No. 48 at 1.] The Court finds that the Notice is not a motion – it does not request that the Court take any action regarding the propriety of joining in the Motion to Realign and the Motion to Dismiss and, instead, merely notifies the Court and the other parties of Denison's joinder in Most's motions. [*See* Filing No. 43.] To clear up confusion, the Court **DIRECTS** the Clerk to revise the title of the document filed at Dkt. 43 in the Court's electronic filing system to read: "Notice of Joinder in Most's Motion to Realign and Motion to Dismiss."

and Indiana Insurance seek the same outcome – "a determination that neither of them is obligated to indemnify or defend Most in the [Underlying Lawsuit] under their respective policies." [Filing No. 39 at 12.] It contends that Harleysville and Indiana Insurance only request that "the Court allocate the damages from the underlying judgment among the insurers on a pro rata basis." [Filing No. 39 at 12.] Most notes that the original Complaint did not raise a claim against Harleysville at all and that the Amended Complaint only requests the pro rata allocation. [Filing No. 39 at 13.] It argues that Indiana Insurance's counterclaim against Harleysville and its cross-claims against Most and Denison "are almost entirely focused on denying coverage to Most" and that Indiana Insurance "does not even argue that the damage to the Plaza Garage did not occur during its policy periods, thereby effectively conceding that if the Court finds coverage then Indiana Insurance and Harleysville are liable pro rata." [Filing No. 39 at 13.] Most asserts that Harleysville and Indiana Insurance raise similar arguments as to why their policies do not provide coverage, which "demonstrates that [their] interests…are completely aligned against Most and Denison." [Filing No. 39 at 14.] It also notes that neither Harleysville nor Indiana Insurance argues that the other is wholly responsible for indemnifying Most for the entire amount of damages, that Most was never simultaneously insured by the two insurers because their policies were in effect at different times, and that the Court only needs to pro rate damages if it finds coverage. [Filing No. 39 at 14-15.]

In its response to the Motion to Realign, Indiana Insurance argues that it has "a substantial conflict" with Harleysville because if there is a duty to defend and indemnify, "Indiana Insurance has an interest in a determination that those damages occurred within both the Harleysville policy periods and the Indiana Insurance policy periods." [Filing No. 44 at 4-5.] Indiana Insurance notes that it has asserted an affirmative defense that the property damage occurred during the Harleysville policy periods, "which is a position directly adverse to Harleysville as Harleysville

seeks a declaration that it owes no continuing duty to defend or indemnify [Most] due to no property damage occurring during its policy periods." [Filing No. 44 at 5.] Indiana Insurance contends that it is in agreement with Denison and presumably Most in arguing that there was coverage during the Harleysville policy periods. [Filing No. 44 at 5.] It asserts that it would "benefit from a factual determination that the property damage in the [Underlying Lawsuit] occurred during the Harleysville policy periods and the Indiana Insurance policy periods," while Harleysville would "benefit from a factual determination that the property damage in the [Underlying Lawsuit] occurred only during the Indiana Insurance policy periods." [Filing No. 44 at 5.] Indiana Insurance argues that while it is technically correct that neither it nor Harleysville has argued that the other is wholly responsible for indemnifying Most for all of the damages awarded, Indiana Insurance has made clear in its affirmative defenses its position that the property damage occurred during the policy periods of the Harleysville Policies and previous policies and Harleysville has taken the position that there is no evidence that property damage occurred during its policy periods. [Filing No. 44 at 6.]

Harleysville argues in its response that it has a clear dispute with Indiana Insurance because "it is in Harleysville's interest for coverage to be triggered after its policies expired on June 1, 2008," and Indiana Insurance has asserted an affirmative defense that evidence developed in the Underlying Lawsuit shows that property damage took place during the Harleysville policy periods. [Filing No. 48 at 8.] Harleysville asserts that this dispute has existed since the filing of the original Complaint, which included a request for a declaration that property damage did not occur during the Harleysville policy periods. [Filing No. 48 at 9.] Harleysville acknowledges that it alleged in the Amended Complaint that Indiana Insurance is a nominal party, but notes that it also alleged that Most is a nominal party and contends that both Most and Indiana Insurance have chosen to

participate in the litigation.  [Filing No. 48 at 9.]  It argues that Indiana Insurance "is a necessary and indispensable party in this dispute because resolving the dispute without [Indiana Insurance] would prejudice the parties and complete relief could not be granted without [Indiana Insurance's] presence."  [Filing No. 48 at 9.]

Most reiterates many of its arguments in its reply.  [Filing No. 54.]

Most's motion is based on the premise that Harleysville and Indiana Insurance have the same interest in the litigation – a finding of no coverage under their policies – and that if coverage is found, they merely ask the Court to allocate damages on a pro rata basis.  But this is an oversimplification of this litigation.  Harleysville seeks declarations that it does not owe coverage under the Harleysville Policies and alleges that Indiana Insurance has been named as a Defendant solely to be bound by the judgment and that it will dismiss Indiana Insurance if Indiana Insurance "stipulates and agrees to be bound by any judgment entered or settlement reached herein."  [Filing No. 8 at 3.]  Indiana Insurance has opted to participate in the litigation, however, filing an Answer and asserting counterclaims against Harleysville and cross-claims against Most and Denison for declarations that the Indiana Insurance Policies do not provide coverage for the Underlying Lawsuit but that, if they do, payment should be allocated on a pro rata basis between it, Harleysville, and any unknown insurers.  [Filing No. 25.]

Put simply, while both Harleysville and Indiana Insurance ideally want the Court to find that their policies do not provide any coverage at all, if coverage is found they both want the Court to find that the other's policies also provide coverage and then to allocate the loss on a pro rata

basis. This is a clear conflict[2] – either way, both want the Court to find that losses occurred during the other's policy periods. *See Trane*, 657 F.2d at 151 ("[A] mere mutuality of interest in escaping liability is not of itself sufficient to justify realignment…. [A] finding that [insurer 1] had no duty to defend could put the defense burden squarely on [insurer 2]. Conversely…a finding that [insurer 1] was liable would reduce or eliminate [insurer 2's] liability. Accordingly, we find that a substantial controversy existed between [insurer 1 and insurer 2], and therefore the realignment ordered below was improper."); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Mead Johnson & Co.*, 2012 WL 2922675, at *3 (S.D. Ind. July 17, 2012) ("[A]lthough [two insurers] have a common interest in avoiding liability, the dispute over defense costs is a real and substantial controversy that justifies them being on opposite sides of this case."); *Scottsdale Ins. Co. v. Subscriptions Plus, Inc.*, 195 F.R.D. 640, 643 (W.D. Wis. 2000) ("Because plaintiff and defendant Progressive both insure defendant Subscriptions Plus, their interests in who must defend or indemnify that defendant are sufficiently adverse to justify their alignment as plaintiff and defendant."). Accordingly, given this "actual, substantial controversy" between Harleysville and Indiana Insurance, *Trane*, 657 F.2d at 149, the Court **DENIES** Most's Motion to Realign Indiana Insurance Company as a Plaintiff, [Filing No. 37].

### III.
#### MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Most's Motion to Dismiss rises or falls with its Motion to Realign, as its sole argument is that realignment destroys diversity so the Court should dismiss this case for lack of subject matter

---

[2] This conflict existed at the time the original Complaint was filed, even though the Complaint did not include the alternative claim asking the Court to allocate any damages on a pro rata basis if coverage was found under the Harleysville Policies. The reality of the situation was always that both Harleysville and Indiana Insurance have an interest in the other's policies providing coverage – either entirely, or on a pro rata basis.

jurisdiction. [Filing No. 39 at 14-15.] Because the Court has denied Most's Motion to Realign, it also **DENIES** Most's Motion to Dismiss for Lack of Subject Matter Jurisdiction. [Filing No. 38.]

## IV.
### CONCLUSION

For the foregoing reasons, the Court:

- **DENIES** Most's Motion to Realign Indiana Insurance Company as a Plaintiff, [37];

- **DENIES** Most's Motion to Dismiss for Lack of Subject Matter Jurisdiction, [38]; and

- **DIRECTS** the Clerk to revise the title of the document filed at Dkt. 43 in the Court's electronic filing system to read: "Notice of Joinder in Most's Motion to Realign and Motion to Dismiss."

Date: 6/6/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**